**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

FILE

IN CLERKS OFFICE
SUPREME COURT, STATE OF WASHINGTON
DATE FEB 0 2 2017

_for_ CHIEF JUSTICE

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ISIDORO PEREZ-CRISANTOS, a single man, | ) ) ) | |
| Appellant, | ) ) | No. 92267-5 |
| v. | ) ) | |
| | ) | En Banc |
| STATE FARM FIRE AND CASUALTY COMPANY, a foreign insurance company, and DOE CORPORATIONS I through V, | ) ) ) ) ) ) | |
| Respondents. | ) ) | Filed _FEB 0 2 2017_ |
| | ) | |

GONZÁLEZ, J. – In 2007, the legislature passed, and the voters of this state ratified, the Insurance Fair Conduct Act (IFCA), RCW 48.30.015. IFCA gives insureds a new cause of action against insurers who unreasonably deny coverage or benefits. RCW 48.30.015(1). IFCA also directs courts to grant attorney fees and authorizes courts to award triple damages if the insurer either acts unreasonably or violates certain insurance regulations. RCW 48.30.015(2)-(3), (5). These regulations broadly address unfair practices in insurance, not just unreasonable denials of coverage or

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

benefits. RCW 48.30.015(5). We are asked to decide whether IFCA also created a new and independent private cause of action for violation of these regulations in the absence of any unreasonable denial of coverage or benefits.[1] We conclude it did not and affirm.

### FACTS

In November 2010, Isidoro Perez-Crisantos was waiting to turn left off snowy Wellesley Avenue in Spokane when his car was struck from behind by Martin Reyes. Clerk's Papers (CP) at 5, 391. Perez-Crisantos was injured and incurred more than $50,000 in medical bills that he contends were the result of the accident. Perez-Crisantos had first party personal injury protection (PIP) and underinsured motorist insurance (UIM) coverage from State Farm Fire and Casualty Company. State Farm paid the PIP coverage limits of $10,000 in medical expenses and $400 in lost wages. Reyes carried $25,000 in liability insurance. Perez-Crisantos settled with Reyes for his policy limits and made a first party UIM claim to State Farm for the remaining damages resulting from the accident. State Farm did not pay benefits under the UIM policy. According to Perez-Crisantos, State

---

[1] The concurrence objects to the way we have framed the issue, suggesting that this caused us to stray from the language and intent of IFCA. But it is the concurrence that strays from RCW 48.30.015. Rather than insert language into the statute that the legislature purposefully omitted, our decision comports with the actual language of RCW 48.30.015 and is framed consistently with the way the parties have framed the issue.

2

Farm denied his UIM claim after its adjustor, who was not a medical expert, concluded that Perez-Crisantos was seeking benefits for excessive chiropractic treatment and an unrelated shoulder surgery. According to State Farm, it has "not denied underinsured motorist benefits to Mr. Perez-Crisantos. It does disagree with the valuation [counsel] has placed on his claim." CP at 386. Either way, after Perez-Crisantos objected to the denial, State Farm sent the file to a doctor, who concurred with the lay adjustor's conclusions.

Perez-Crisantos sued on a variety of grounds. Among other things, he alleged that State Farm had violated IFCA, several of IFCA's implementing regulations, and the Consumer Protection Act (CPA), chapter 19.86 RCW. He also brought bad faith and negligence claims. Most of the claims were stayed while the UIM claim was sent to arbitration. The arbiter largely found for Perez-Crisantos. Based on the damages awarded, it appears the arbiter concluded the shoulder injury was related to the accident, disallowed some of the chiropractic physical therapy treatments as excessive, and awarded Perez-Crisantos a gross amount of about $51,000. After adjusting for Reyes's settlement, PIP benefits, and attorney fees, Perez-Crisantos received about $24,000 from the UIM arbitration. The court lifted the stay, and Perez-Crisantos amended his complaint to make clear he was alleging an

*Perez-Crisantos v. State Farm*, No. 92267-5

IFCA claim based on the violation of IFCA regulations relating to unfair settlement practices. Specifically, he alleged that State Farm forced him to litigate in order to get payments that were due to him.

Meanwhile, Perez-Crisantos sought discovery about State Farm's incentive programs and the personnel files of State Farm employees involved in processing his claim, apparently seeking evidence that State Farm's incentive program was improperly encouraging its employees to deny claims or settle them for unreasonably low amounts. While it is not in the record, it appears State Farm provided discovery on the incentive programs but resisted release of the personnel files. The trial court allowed some discovery about the employee compensation and reviewed some materials under seal. The judge declined to order State Farm to release the personnel files themselves, finding Perez-Crisantos had not made a sufficient showing.

State Farm moved for summary judgment dismissal, largely on the merits. It argued that there was no genuine dispute that it had acted reasonably and in good faith throughout the claims process, that Perez-Crisantos had not alleged a cognizable claim, and that the parties merely had a reasonable disagreement about the value of the claim. Unfortunately, the record does not reveal State Farm's valuation of the UIM claim. Relying

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Perez-Crisantos v. State Farm*, No. 92267-5

largely on unreported cases out of federal court, State Farm argued that a delay in payment of UIM benefits until after arbitration is not a denial of payment under IFCA. CP at 56-57 (citing *Beasley v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 1494030, at *6 (W.D. Wash. Apr. 16, 2014) and *Country Preferred Ins. Co. v. Hurless*, 2012 WL 2367073, at *4 (W.D. Wash. June 21, 2012)). Perez-Crisantos moved for partial summary judgment, contending that State Farm had violated WAC 284-30-330(7)'s prohibition on making a first party claimant litigate to recover "'amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions.'" CP at 104 (quoting WAC 284-30-330(7)). He also argued that State Farm's summary judgment motion was premature because discovery on State Farm's employee incentive program was not complete.

At the summary judgment hearing, the trial judge took issue with Perez-Crisantos's characterizing State Farm as having "made a zero offer" on the UIM claim. Verbatim Report of Proceedings (VRP) at 10-11. In the judge's view, "it verges on being misleading in terms of trying to evaluate whether or not you have a basis for a summary judgment." *Id.* at 11. Instead, the judge characterized State Farm as arguing that Perez-Crisantos had been fully compensated for his injuries from Reyes's policy limits and

5

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Perez-Crisantos v. State Farm*, No. 92267-5

State Farm's PIP payment. She concluded that "[t]here has never been one scintilla of evidence" that State Farm's actions were "unreasonable and there must have been some ulterior motive" for them, such as "some sort of incentive program to 'lowball claims.'" *Id.* at 27. She dismissed the case with prejudice on the merits. Perez-Crisantos sought direct review, which we granted.

ANALYSIS

This case is before us on appeal from summary judgment and asks us to interpret a statute. Our review of both is de novo. *Auto. United Trades Org. v. State*, 183 Wn.2d 842, 853-54, 357 P.3d 615 (2015) (citing *Freeman v. State*, 178 Wn.2d 387, 393, 309 P.3d 437 (2013); *Lummi Indian Nation v. State*, 170 Wn.2d 247, 257-58, 241 P.3d 1220 (2010)). Summary judgment "may be granted if the pleadings, affidavits, and depositions before the trial court establish that there is no genuine issue of material fact and that as a matter of law the moving party is entitled to judgment." *Ruff v. County of King*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995) (citing *Dickinson v. Edwards*, 105 Wn.2d 457, 461, 716 P.2d 814 (1986)).

1. IFCA CAUSE OF ACTION

For many years, insureds have been able to sue their insurers for violations of certain insurance regulations in a CPA or bad faith action. *See*

6

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Truck Ins. Exch. v. VanPort Homes, Inc.*, 147 Wn.2d 751, 764, 58 P.3d 276 (2002); *Indus. Indemn. Co. v. Kallevig*, 114 Wn.2d 907, 921-22, 792 P.2d 520 (1990). We must decide whether first party insureds can also sue their insurance companies under IFCA for regulatory violations. This requires us to determine the legislature's intent, which in this case includes the intent of the voters who ultimately ratified IFCA. *Dep't of Ecology v. Campbell & Gwinn, LLC*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)); *see also Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1*, 149 Wn.2d 660, 671, 72 P.3d 151 (2003) (citing *State v. Thorne*, 129 Wn.2d 736, 763, 921 P.2d 514 (1996)). If the statute, read in the context of all the legislature has said on the subject, is plain on its face, we will give it that plain meaning. *Campbell & Gwinn*, 146 Wn.2d at 11-12. If after reading the statute in context, it "remains susceptible to more than one reasonable meaning, the statute is ambiguous and it is appropriate to resort to aids to construction, including legislative history." *Id.* at 12 (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001)).

RCW 48.30.015 says in most relevant part:

(1) Any first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action in the superior court of this state to recover the actual damages sustained, together with the costs of the

7

action, including reasonable attorneys' fees and litigation costs, as set forth in subsection (3) of this section.

(2) The superior court may, after finding that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits or has violated a rule in subsection (5) of this section, increase the total award of damages to an amount not to exceed three times the actual damages.

(3) The superior court shall, after a finding of unreasonable denial of a claim for coverage or payment of benefits, or after a finding of a violation of a rule in subsection (5) of this section, award reasonable attorneys' fees and actual and statutory litigation costs, including expert witness fees, to the first party claimant of an insurance contract who is the prevailing party in such an action.

. . . .

(5) A violation of any of the following is a violation for the purposes of subsections (2) and (3) of this section:

(a) WAC 284-30-330, captioned "specific unfair claims settlement practices defined."

The relationship between subsections (2), (3), and (5) is, as Judge Peterson put it, "vexing." *Workland & Witherspoon, PLLC v. Evanston Ins. Co.,* 141 F. Supp. 3d 1148, 1155 (E.D. Wash. 2015). Subsections (2) and (3) give the trial court the discretion to award triple damages and directs that it award attorney fees if the insurer is found to have acted unreasonably or violated listed insurance regulations. Subsection (5) lists the relevant regulations. But given that the trier of fact must find that the insurer acted unreasonably under subsection (1), and that such a finding mandates

8

*Perez-Crisantos v. State Farm*, No. 92267-5

attorney fees under subsection (3) and gives the trial court discretion to award treble damages under subsection (2), it is not clear what a finding of a regulatory violation accomplishes.

The regulations in question are long-standing and have long been enforceable by the insurance commissioner, and, in some cases, by first party insureds in bad faith or CPA actions. LAWS OF 1947, ch. 79 § 30.01 (partially codified at RCW 48.30.010); Wash. St. Reg. 78-08-082 (Aug. 16, 1978); *Truck Ins. Exch.,* 147 Wn.2d at 764; *Kallevig*, 114 Wn.2d at 921-22. These regulations largely direct insurance companies to act fairly and promptly. WAC 284-30-330, -350, -360, -370, -380. The violation of some of these regulations could themselves be potentially actionable under IFCA for that reason. *See, e.g.,* WAC 284-30-330(4) (declaring "[r]efusing to pay claims without conducting a reasonable investigation" unfair). The violation of some of these regulations are not necessarily enough, on their own, to be actionable. For example, insurers are required to respond within 10 working days to "communications from [an individual] claimant reasonably suggesting that a response is expected." WAC 284-30-360(3). This would be violated by a response on the 11th day.

Perez-Crisantos argues that State Farm compelled him to litigate his UIM claim through "a pre-suit offer of $0," CP at 104, which, he contends,

9

*Perez-Crisantos v. State Farm*, No. 92267-5

violated insurance regulations that deem it unfair or deceptive to "[c]ompel[]

a first party claimant to initiate or submit to litigation, arbitration, or

appraisal to recover amounts due under an insurance policy by offering

substantially less than the amounts ultimately recovered in such actions or

proceedings." WAC 284-30-330(7). He contends that this regulatory

violation is independently actionable under IFCA. State Farm contends that

the statute clearly sets forth the basis for private causes of action and those

causes of action do not include regulatory violations.

Local federal courts have split on this question.[2] For example, last

year, one judge found that IFCA does create an implied cause of action

under Washington law for violation of the listed regulations. *Langley v.

GEICO Gen. Ins. Co.,* 89 F. Supp. 3d 1083, 1085 (E.D. Wash. 2015).

Another judge on the same bench found it did not. *Workland,* 141 F. Supp.

3d at 1156.

Perez-Crisantos urges us to follow the *Langley* decision.[3] In *Langley,*

the court applied the three-part test set forth in *Bennett v. Hardy,* 113 Wn.2d

---

[2] A learned practitioner has observed that IFCA cases tend to be heard in federal court sitting in diversity jurisdiction. Shannon M. Kilpatrick, *Sounding the Alarm: Is Diversity Jurisdiction Interfering with Washington State's Development of Its Own Body of Law Related to the Insurance Fair Conduct Act?*, 49 GONZ. L. REV. 553, 554 (2014). Many of the cases are unreported.

[3] Perez-Crisantos also cites three cases for the proposition that recent federal cases allow IFCA claims based on regulatory violations. Appellant's Br. at 22 (citing *Merrill v. Crown Life Ins. Co.*, 22 F. Supp. 3d 1137 (E.D. Wash. 2014); *Hell Yeah Cycles v. Ohio*

10

*Perez-Crisantos v. State Farm*, No. 92267-5

912, 920-21, 784 P.2d 1258 (1990) and concluded that IFCA contains an implied cause of action for violation of the listed regulations. *Langley*, 89 F. Supp. 3d at 1089. Under that test, "we must resolve the following issues: first, whether the plaintiff is within the class for whose 'especial' benefit the statute was enacted; second, whether legislative intent, explicitly or implicitly, supports creating or denying a remedy; and third, whether implying a remedy is consistent with the underlying purpose of the legislation." *Bennett*, 113 Wn.2d at 920-21 (quoting *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 823 F.2d 1349, 1353 (9th Cir. 1987)). The *Langley* opinion concluded that the plaintiff was "'within the class for whose especial benefit the statute was enacted.'" *Langley*, 89 F. Supp. 3d at 1089 (quoting *Bennett*, 113 Wn.2d at 920). As *Langley* properly noted, the specific purpose of IFCA was to provide insureds with another legal resource against their insurer for wrongful denials. *Id.* The opinion concluded that the implied remedy is consistent with IFCA's purpose of protecting insureds. *Id.* at 1090-91 (citing *Trinity Universal Ins. Co. of Kan. v. Ohio Cas. Ins. Co.*, 176 Wn. App. 185, 201, 312 P.3d 976 (2013)).

---

*Sec. Ins. Co.*, 16 F. Supp. 3d 1224 (E.D. Wash. 2014); *Hover v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4239655 (E.D. Wash. 2014)). All three cases say in passing that an IFCA claim can be based on a regulatory violation, but none explain or apply that statement. *Merrill*, 22 F. Supp. 3d at 1148; *Hell Yeah Cycles*, 16 F. Supp. 3d at 1235-36; *Hover*, 2014 WL 4239655, at *4. We do not find them illuminating.

11

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

We respectfully disagree with the *Langley* opinion that legislative intent supports creating an implicit IFCA cause of action. IFCA explicitly creates a cause of action for first party insureds who were "unreasonably denied a claim for coverage or payment of benefits." RCW 48.30.015(1). IFCA does not state it creates a cause of action for first party insureds who were unreasonably denied a claim for coverage or payment of benefits or "whose claims were processed in violation of the insurance regulations listed in (5)," which strongly suggests that IFCA was not meant to create a cause of action for regulatory violations. "'[W]here a statute specifically designates the things upon which it operates, there is an inference that the Legislature intended all omissions.'" *State v. LG Elecs., Inc.*, 186 Wn.2d 1, 9, 375 P.3d 636 (2016) (quoting *In re Pers. Restraint of Hopkins*, 137 Wn.2d 897, 901, 976 P.2d 616 (1999)). And where the legislature includes particular language in one section of a statute but omits it in another, the exclusion is presumed intentional. *Millay v. Cam*, 135 Wn.2d 193, 202, 955 P.2d 791 (1998).

We recognize that IFCA is ambiguous, and as it is ambiguous, courts have appropriately turned to extrinsic evidence of legislative intent. *See Campbell & Gwinn, LLC*, 146 Wn.2d at 12 (citing *Cockle*, 142 Wn.2d at

12

*Perez-Crisantos v. State Farm*, No. 92267-5

808). The *Langley* court found evidence of legislative intent in the 2007

Voters' Pamphlet, which explained that

> "ESSB 5726 would authorize any first party claimant to bring a
> lawsuit in superior court against an insurer for unreasonably denying a
> claim for coverage or payment of benefits, *or violation of specified
> insurance commissioner unfair claims handling practices regulations*,
> to recover damages and reasonable attorney fees, and litigation costs."

*Langley*, 89 F. Supp. 3d at 1090 (emphasis added) (quoting Explanatory

Statement, Referendum Measure 67, *State of Washington Voters Pamphlet,

General Election* 14 (Nov. 6, 2007)). This court has considered the official

voter's pamphlet to determine the meaning of initiatives before. *Parents

Involved in Cmty. Sch.*, 149 Wn.2d at 671 (citing *Thorne*, 129 Wn.2d at

763). The *Langley* court reasonably found the emphasized language

evidence of legislative intent to create a private cause of action for violation

of insurance regulations. *See also* FINAL B. REP. ON ENGROSSED SUBSTITUTE

S.B. 5726, at 1-2, 60th Leg., Reg. Sess. (Wash. 2007) (noting that under the

act, "[a] plaintiff may also recover damages upon a finding that the insurer

violated one of five rules adopted by the Office of the Insurance

Commissioner").

However, as amicus curiae the American Insurance Association notes,

the ballot title that would have been in front of voters as they voted on IFCA

13

*Perez-Crisantos v. State Farm*, No. 92267-5

did not suggest IFCA creates private cause of action for regulatory

violations. The official ballot title said:

> The legislature passed Engrossed Substitute Senate Bill 5726 (ESSB 5726) concerning insurance fair conduct related to claims for coverage or benefits and voters have filed a sufficient referendum petition on this bill.
>
> This bill would make it unlawful for insurers to unreasonably deny certain coverage claims, and permit treble damages plus attorney fees for that and other violations. Some health insurance carriers would be exempt.

*State of Washington Voters Pamphlet, General Election* 13 (Nov. 6, 2007),

http://www.sos.wa.gov/_assets/elections/Voters'%20Pamphlet%202007.pdf,

[https://perma.cc/9QB9-Y9QU]. This language does not suggest an intent

to create a private cause of action for regulatory violations. Quite the

opposite: it suggests that IFCA creates a cause of action for unreasonable

denials of *coverage* and also permits treble damages in some circumstances.

On balance, we conclude that the legislative history suggests that IFCA does

not create a cause of action for regulatory violations.

We recognize that the pattern jury committee recently came to the

opposite conclusion. The pattern jury instruction for an IFCA claim

provides:

> (Name of plaintiff) claims that (name of insurer) has violated the Washington Insurance Fair Conduct Act. To prove this claim, (name of plaintiff) has the burden of proving each of the following propositions:

14

> (1) That <u>(name of insurer)</u> [unreasonably denied a claim for coverage] [unreasonably denied payment of benefits] [or] [violated a statute or regulation governing the business of insurance claims handling];
>
> (2) That <u>(name of plaintiff)</u> was [injured] [damaged]; and
>
> (3) That <u>(name of insurer's)</u> act or practice was a proximate cause of <u>(name of plaintiff's)</u> [injury] [damage].

> If you find from your consideration of all of the evidence that each of these propositions has been proved, your verdict [on this claim] should be for <u>(name of plaintiff).</u> On the other hand, if any of these propositions has not been proved, your verdict [on this claim] should be for <u>(name of insurer).</u>

6A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CIVIL 320.06.01 (6th ed. 2013 Supp.) (alterations in original). Put another way, the pattern jury committee concluded that IFCA created a cause of action if an insurer "unreasonably denied a claim for coverage," or "unreasonably denied payment of benefits," or "*violated a statute or regulation governing the business of insurance claims handling.*" *Id.* (emphasis added). That last alternative contemplates, at least, violations of the regulations listed in RCW 48.30.015(5).

But jury instructions are not the law. *State v. Brush*, 183 Wn.2d 550, 557, 353 P.3d 213 (2015). It is not at all clear that implying a cause of action is consistent with the legislature's intent as expressed in the actual statutory language. As the *Workland* opinion observed in rejecting the claim

15

*Perez-Crisantos v. State Farm*, No. 92267-5

that IFCA made regulatory violations actionable, "If the legislature truly intended to create a third IFCA cause of action arising out of subsection (5), they would have utilized the same or similar language as in subsection (1)." *Workland*, 141 F. Supp. 3d at 1155. *See also Morella*, 2013 WL 1562032, at *3 n.2 (rejecting similar claim); *Hurless*, 2012 WL 2367073, at *3-4 (same); *Cardenas v. Navigators Ins. Co.*, 2011 WL 6300253, at * 6 (W.D. Wash. Dec.16, 2011) (same). Instead, IFCA makes regulatory violations relevant to the apportioned attorneys' fees and damages associated with that derivative violation. *See Mut. of Enumclaw Ins. Co. v. Myong Suk Day*, No. 75633-8-I, 2016 WL 7210718, at *8 (Wash. Ct. App. Dec. 12, 2016) (apportioning attorney fees based on the issues prevailed upon at appeal). This interpretation is consistent with our canons of statutory construction prohibiting us from reading language into subsection (1) that the legislature expressly omitted and from rendering any portion of subsections (2) and (3) superfluous. Moreover, this interpretation is consistent with existing precedent and avoids absurd results. We note that the only reported Washington state case on IFCA described the statute consistently with *Workland. See Ainsworth v. Progressive Cas. Ins. Co.*, 180 Wn. App. 52, 79, 322 P.3d 6 (2014). *Ainsworth* notes that "[s]ubsection (1) describes two separate acts giving rise to an IFCA claim. The insured must show that the

16

*Perez-Crisantos v. State Farm*, No. 92267-5

insurer unreasonably denied a claim for coverage *or* that the insurer unreasonably denied payment of benefits. If either or both acts are established, a claim exists under IFCA." *Id.* (citing RCW 48.30.015).

Finally, we note that it is unlikely the legislature would have intended to create a private cause of action for violation of only some of the specific regulations listed in RCW 48.30.015(5). For example, if we found that violation of regulations listed in IFCA was independently actionable, then "[m]aking a claim payment to a first party claimant or beneficiary not accompanied by a statement setting forth the coverage under which the payment is made," not responding until the 11th working day to "pertinent communications from a claimant reasonably suggesting that a response is expected," and notifying a claimant on the 16th day that a claim had been accepted would all be actionable even if the insured was never unreasonably denied coverage or the payment of benefits. *See* WAC 284-30-330(9), -360(3), -380(1).

We conclude that IFCA does not create an independent cause of action for regulatory violations.[4]

---

[4] The concurrence, purporting to avoid confusion surrounding IFCA's purpose and scope, instead would perpetuate the confusion that already exists. *Compare Langley*, 89 F. Supp. 3d 1083 (implied cause of action), *with Workland*, 141 F. Supp. 3d 1148 (no implied cause of action). It simply prefers the current confusion to a clear holding that subsections (2), (3), and (5) of IFCA do not

17

## 2. SUMMARY JUDGMENT

Perez-Crisantos argues that summary judgment dismissal of his claims was inappropriate because there were material facts in dispute. He also contends that his partial summary judgment motion should have been granted and that more discovery into State Farm's incentive programs was required. The trial judge dismissed the case on the merits because she concluded that State Farm had acted reasonably and that State Farm had not "'lowball[ed]' their insured such that their insured was required to litigate." VRP at 24.

Disparity between an offer and an arbitration award alone does not establish a violation of WAC 284-30-330(7). *Am. Mfrs. Mut. Ins. Co. v. Osborn*, 104 Wn. App. 686, 701, 17 P.3d 1229 (2001) (citing *Keller v. Allstate Ins. Co.*, 81 Wn. App. 624, 915 P.2d 1140 (1996)). There has to be something more. *Id.* In this case, Perez-Crisantos suggests that something more can be found in the fact PIP benefits were allowed based on the same evidence and his suspicion that the incentive program created bad incentives. But State Farm never disputed that some of Perez-Crisantos's injuries came from the accident; it is not necessarily inconsistent for an insurer to pay the one and balk at the other based on its valuation of the claim. The fact State

---

create an independent implied cause of action in addition to that expressly created in subsection (1).

18

*Perez-Crisantos v. State Farm*, No. 92267-5

Farm paid PIP benefits is not sufficient to create a material question of fact that State Farm violated insurance regulations by rejecting some of Perez-Crisantos's UIM claim.

As to the CPA claim, in order to prevail "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531 (1986). A CPA claim can be predicated on a violation of WAC 284-30-330. *Kallevig*, 114 Wn.2d at 923 ("A violation of WAC 284-30-330 constitutes a violation of RCW 48.30.010(1), which in turn constitutes a per se unfair trade practice by virtue of the legislative declaration in RCW 19.86.170."). State Farm agrees that an insured can establish the first and second elements of a CPA claim by showing the insurer violated one of the relevant WAC provisions. But State Farm contends that Perez-Crisantos has failed to make that showing because he did not present a genuine issue of fact that it violated any provision of WAC 284-30-330. We agree. Even taking the facts in the light most favorable to Perez-Crisantos, as we must, he has not shown a genuine issue that State Farm acted unreasonably.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Perez-Crisantos v. State Farm*, No. 92267-5

Perez-Crisantos also argues that summary judgment was premature because more discovery into State Farm's incentive programs was needed. State Farm argues that Perez-Crisantos failed to object to summary judgment on the record before the trial court. State Farm observes, correctly, that a party can move for summary judgment before discovery is complete: "A trial court may continue a summary judgment hearing if the nonmoving party shows a need for additional time to obtain additional affidavits, take depositions, or conduct discovery." *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 742, 218 P.3d 196 (2009) (citing CR 56(f)). "The trial court may deny a motion for a continuance when (1) the requesting party does not have a good reason for the delay in obtaining the evidence, (2) the requesting party does not indicate what evidence would be established by further discovery, or (3) the new evidence would not raise a genuine issue of fact." *Butler v. Joy*, 116 Wn. App. 291, 299, 65 P.3d 671 (2003) (citing *Tellevik v. 31641 W. Rutherford St.*, 120 Wn.2d 68, 90, 838 P.2d 111, 845 P.2d 1325 (1992)). At the summary judgment hearing, the trial judge specifically declined to allow more discovery into personnel files of State Farm employees because she found insufficient evidence that such an intrusion was appropriate to show the incentive program was having a malign effect on claims processing. Perez-Crisantos did not specifically

20

*Perez-Crisantos v. State Farm*, No. 92267-5

assign error to that ruling or show that it was in error. Given the facts

before trial judge at the time of summary judgment, we find no error. [5]

CONCLUSION

We hold that an IFCA claim cannot be predicated on a regulatory

violation alone. We find that summary judgment was appropriately granted

and affirm.

---

[5] Perez-Crisantos's motion for attorney fees under RCW 48.30.015(3) and RCW 19.86.090 is denied.

*Perez-Crisantos v. State Farm*, No. 92267-5

González, J.

WE CONCUR:

| | |
|---|---|
| Fairhurst, C.J. | |
| Johnson, J. | Wiggins, J. |
| Owens, J. | Gordon McCloud, J. |
| Madsen, J. | Yu, J. |

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Perez-Crisantos v. State Farm Fire & Casualty Co.*

No. 92267-5

STEPHENS, J. (concurring in result only)—In 2007, the legislature enacted and the people ratified the Insurance Fair Conduct Act (IFCA), RCW 48.30.015, to strengthen the remedies and penalties available for the unfair handling of first-party insurance claims. To date, litigation under IFCA has proceeded mainly in federal court, with this case marking the first time this court has been asked to entertain arguments as to the statute's meaning. Encouraged by amici, the majority embraces this opportunity to offer an interpretation, even though interpreting IFCA is unnecessary and irrelevant to the resolution of this case.

We should await an appropriate case before taking such a significant step, and instead resolve this appeal on the grounds reached below. The superior court dismissed this case on summary judgment because the plaintiff could not establish a violation of Washington Administrative Code (WAC) 284-30-330(7). The majority affirms this holding. It is therefore entirely unnecessary to decide whether a WAC

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

violation gives rise to an implied cause of action under IFCA. I fear that the majority's gratuitous "holding" on IFCA will lead to confusion and will frustrate the intent of this remedial statute. I respectfully dissent from that holding, though I concur in the decision to affirm the superior court's order on summary judgment.

## I. *This Appeal Does Not Require the Court To Decide Whether a WAC Violation Supports Remedies and Penalties under IFCA*

The majority frames the issue in this case as whether a violation of WAC 284-30-330(7) supports an implied cause of action under IFCA. Majority at 2, 7. Nonetheless, it ultimately agrees with the superior court that Isidoro Perez-Crisantos failed to present sufficient evidence of a violation of the insurance regulation. It thus affirms the dismissal of his claims based on the Consumer Protection Act (CPA), chapter 19.86 RCW, and bad faith and negligence, as well as IFCA. I agree with this decision.

In granting summary judgment of dismissal, the superior court drew no distinction between the plaintiff's allegations based on the WAC provision and his overarching allegation that State Farm Fire and Casualty Company acted unreasonably. The court noted, "We do not have a lot of law on IFCA. We have quite a bit of law on some of these WACs. The point is that the issue for the court is to determine if the insurance company is acting reasonably or unreasonably." Verbatim Report of Proceedings (Aug. 21, 2015) (VRP) at 23. The court continued,

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

"The issue before the court is whether or not State Farm reasonably handled this claim, and that their position was a reasonable position. And that they did not 'lowball' their insured such that their insured was required to litigate. That is what this claim is about." *Id.* at 24. Here, the superior court was plainly describing a claim under WAC 284-30-330(7), which addresses unfair settlement conduct that forces an insured to arbitrate or litigate. That provision states:

> The following [practices] are hereby defined as unfair methods of competition and unfair or deceptive acts or practices of the insurer in the business of insurance, specifically applicable to the settlement of claims:
>
> . . . .
>
> (7) Compelling a first party claimant to initiate or submit to litigation, arbitration, or appraisal to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in such actions or proceedings.

WAC 284-30-330(7). The superior court explained:

> The gravamen of the WAC is that the plaintiff is being forced to [arbitrate or litigate] because of the intransigence and unreasonableness of the first party insurance company. My view is that is not what . . . went on in this case. There was a reasonable dispute between the two parties that ultimately had to be resolved through an arbitration proceeding, and it was.

VRP at 26-27. Having concluded that State Farm did not violate WAC 284-30-330(7)—or more generally act unreasonably—the superior court determined that further proceedings (including additional discovery) were unnecessary. *Id.* at 29 ("Really, the discussion ends at that point.").

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Understanding the basis for the superior court's summary judgment ruling, which the majority affirms, this case is not an appropriate vehicle for deciding whether a WAC violation (if proved) could support liability under IFCA. While the briefing before this court invites consideration of that broader issue, we should resist. I would await better briefing and a full opportunity to consider the impact of an IFCA holding in a case where it matters.

## II. The Majority's Putative "Holding" Adds to the Confusion Surrounding IFCA's Purpose and Scope

The majority concludes that "an IFCA claim cannot be predicated on a regulatory violation alone." Majority at 21. To reach this conclusion, it frames the issue in terms of whether the cause of action created in IFCA's subsection (1) is exclusive, or whether instead "IFCA *also* created a new and independent private cause of action for violation of these regulations in the absence of any unreasonable denial of coverage or benefits." *Id.* at 2 (emphasis added). This framing of the issue is somewhat confusing and leaves many questions unanswered.

As the majority notes, federal district courts in Washington have considered whether there is an implied cause of action under IFCA premised on violations of certain WAC provisions. *See Langley v. GEICO Gen. Ins. Co.*, 89 F. Supp. 3d 1083 (E.D. Wash. 2015) (holding there is an implied cause of action); *Workland & Witherspoon, PLLC v. Evanston Ins. Co.*, 141 F. Supp. 3d 1148 (E.D. Wash. 2015)

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(disagreeing with *Langley*). These courts have found it difficult to make sense of all the language in IFCA under such a framework, with Judge Rosanna Malouf Peterson noting in *Workland* that the relationship between subsections (2), (3), and (5) is "vexing." *Workland*, 141 F. Supp. 3d at 1155. It may be that the difficulty arises not from any inherent flaw in IFCA but from addressing the question in terms of an implied cause of action separate from that provided in subsection (1), rather than reading IFCA in light of its purpose under chapter 48.30 RCW.

Chapter 48.30 RCW addresses unfair practices and fraud in the business of insurance. RCW 48.30.010 generally outlines available "remedies and penalties" against insurers who engage in unfair or deceptive acts or practices. Amended alongside the enactment of RCW 48.30.015, RCW 48.30.010(7) references IFCA's language prohibiting insurers from "unreasonably deny[ing] a claim for coverage or payment of benefits to any first party claimant." Importantly, chapter 48.30 RCW does not purport to enumerate all available causes of action; instead, it contemplates a range of possible private actions, in addition to enforcement actions by the insurance commissioner. Private actions may include claims sounding in bad faith, negligence, or breach of contract, as well as statutory claims.

IFCA, as part of chapter 48.30 RCW, must be understood in this context. While RCW 48.30.015(1) creates a new cause of action based on unreasonable

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

denials of claims for coverage or benefits, subsections (2) and (3) speak to new remedies and penalties superior courts are authorized or required to impose when certain findings are made. Subsections (2) and (3) refer to remedies and penalties based upon a finding "that an insurer has acted unreasonably in denying a claim for coverage or payment of benefits *or has violated a rule in subsection (5) of this section.*" RCW 48.30.015(2), (3) (emphasis added). The majority's interpretation renders the second half of this sentence inoperative, requiring the superior court to find a violation of subsection (1) as a precondition to affording IFCA remedies and penalties—despite the obvious disjunctive phrasing.

I believe a problem with the majority's analysis is that it asks the wrong question, i.e., whether subsections (2), (3), and (5) of IFCA create an implied cause of action in addition to that expressly created in subsection (1).[1] Rather than asking what the statute implies, we should consider what it actually says. Subsections (2) and (3) expressly provide that the superior court may treble the proven actual damages and shall award reasonable attorney fees and costs upon finding a violation of the insurance regulations identified in subsection (5). Additionally, subsection

---

[1] In fairness to the majority, the parties and amici sometimes frame the question this way, following the analysis of the federal district court in *Langley*. *See Langley*, 89 F. Supp. 3d at 1084-85; Appellant's Br. at 22-27; Br. of Resp't State Farm at 16-20; Br. of Amicus Curiae Am. Ins. Ass'n at 7-11; Br. of Amicus Curiae Wash. State Ass'n for Justice Found. at 14.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

(6) emphasizes that IFCA "does not limit a court's existing ability to make any other determination regarding an action for an unfair or deceptive practice of an insurer or provide for any other remedy that is available at law." RCW 48.30.015(6). Reading IFCA's language in context, it reflects the legislature's awareness—an awareness that permeates chapter 48.30 RCW—that claims alleging unfair or deceptive insurance conduct may take a variety of forms. Indeed, multiple claims based on the same underlying conduct are generally brought in a single action, and the language in subsection (1) intending to broaden available remedies should not be misread to restrict them.

After the dust settles on this case, questions will remain as to what remedies and penalties IFCA authorizes, even if we accept as a holding the majority's unnecessary conclusion that subsections (2), (3), and (5) do not create an implied cause of action. I believe today's opinion will engender only further debate and not the definitive interpretation the majority is apparently reaching for. I would resolve this case on the grounds reached by the court below without addressing the question of whether a WAC violation alone can support a claim under IFCA. Accordingly, I dissent from the majority's analysis of IFCA but concur in its decision to affirm the summary judgment order of dismissal.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

*Perez-Crisantos v. State Farm Fire & Casualty Co.*, 92267-5
(Stephens, J., concurring in result only)

Stephens, J.